IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH SPROUL,

               *Plaintiff,*

   v.

SUNPRO SOLAR, *et al,*

               *Defendants.*

Civil Action No. 2:22-cv-1439

Hon. William S. Stickman IV

## <u>MEMORANDUM OPINION</u>

WILLIAM S. STICKMAN IV, United States District Judge

    *Pro se* Plaintiff Keith Sproul ("Sproul") brings claims against Defendant SunPro Solar ("Defendant")[1] for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and retaliation under the ADA and Title VII. (ECF No. 1). Presently before the Court is Defendant's Motion to Dismiss ("motion"). (ECF No. 21). For the reasons set forth below, the motion will be granted and all claims against Defendant will be dismissed.

### I.    FACTUAL BACKGROUND

    In or about July 2021, Sproul began working for Defendant, a solar energy company, as an Appointment Setter. (ECF No. 22-1). He conducted telephone calls with potential solar panel installation customers that required him to follow an approved script. (*Id.*). Sproul has irritable bowel syndrome ("IBS"), anxiety and depression. (ECF No. 1, p. 5). He was "exceeding the

---

[1] Defendant states its correct name is ADT Solar LLC. (ECF No. 21). Yet, Defendant has not moved to amend the caption.

metrics for the essential function of the job," but he was not permitted to "step away from the computer for a few minutes," in addition to his "official breaks." (*Id.* at 7). Sproul made 400 calls a day and claims, "[d]oing the exact thing over and over is the definition of insanity and saying the same thing over and over again made the rest necessary." (*Id.*).

For "a little while," he was granted the "accommodation" of "flexibility with the script." (*Id.*). According to Sproul, "[t]he script is designed to manipulate people and didn't always seem truthful and I wanted to make sure that I was being honest and transparent with people and serving the customer like my religious beliefs tell me to." (*Id.*). Sproul identifies as "Christian." (*Id.* at 5). Furthermore, the script flexibility was "better for [his] mental health, so an accommodation for my mind and spirt." (*Id.* at 7). He followed the same basic structure – i.e., the introduction, purpose of the call, the control question, the value proposition, and the qualifying questions – but he changed the wording. This flexibility ceased when he divulged to his peers that he was able to do things differently. "Management Ashley Flesche" told Sproul he could no longer have flexibility with the script since his peers could not. According to Sproul, "that's retaliation for me engaging in protected workplace speech regarding [ ] work conditions as the NLRB protects and [ ] because I have an accommodation [it] doesn't entitle my coworkers to the same treatment [. . .]." (*Id.*). After that, his "leads got worse," and it was Sproul's belief that "management" was "posing as customers on the phone, trying to trip [him] up and fail [him] so they could fire [him]." (*Id.*). On or about the end of October, in a meeting with Dominque Crye (Manager) and Roger Rodelina (Human Resources Representative), Sproul was given a written warning for having quality of performance rated below 90% and for not being ready on time. (ECF No. 22-1, p. 2).

On November 10, 2021, Sproul was terminated by videoconference for alleged insubordination. (ECF No. 1, pp. 8-9); (ECF No. 22-1, p. 2). Around that time, he posted a video in Defendant's Microsoft Teams chat of a man using the "F word" while "talking to a business owner about [how] he's the problem." (ECF No. 1, pp. 7-8). Sproul claims that his peers "made sexual innuendos in the teams chat and maybe a little vulgarity," and they were treated differently. (*Id.* at 8). He alleges that his colleague, Tiffani Maynard ("Ms. Maynard"), "daily, verbally abused and assaulted [him] with profanity laced tirades because she disagreed with [his] beliefs," and that he was fired shortly after filing a complaint against her. (*Id.*).

Sproul also takes issue with the entire solar industry. He claims customers found solar product use more costly than expected, this expense constituted a misuse by solar companies of government subsidies to homeowners who install solar panels, and that marketing for private solar companies is intentionally misleading. (*Id.*). He objects to a website called *www.asksolar.com*, which lists information about Defendant and "hundreds" of other solar panel installation companies for consumer review. (*Id.*).

## II.   STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept

unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Complaints brought *pro se* are afforded more leeway than those drafted by attorneys. In determining whether to dismiss a complaint brought by a *pro se* litigant, a federal district court is "required to interpret the *pro se* complaint liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Therefore, in keeping with its duty to "construe *pro se* complaints liberally ... [the Court] will consider" additional facts included in Sproul's filings that came after the complaint to the extent they are consistent with the allegations in the complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

4

Attached to Defendant's brief in support of its motion is Sproul's Equal Employment Opportunity Commission ("EEOC") charge and the right-to-sue letter that Sproul received from the EEOC. (ECF Nos. 22-1 and 22-2). Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and a court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Because they are authentic and integral to the complaint, the Court will consider the EEOC charge and the right-to-sue letter. *See McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 WL 6253417, at *3 (W.D. Pa. Dec. 4, 2013) (holding that in deciding a 12(b)(6) motion, the court "may rely upon the EEOC administrative charge" in ruling on the motion).

### III.   ANALYSIS

After careful review of Sproul's pleadings, the Court concludes that he has not plausibly alleged that he suffered an adverse employment action because of religious beliefs or a disability. There is no question Sproul is dissatisfied with the solar industry and Defendant's call center sales business model, but his generalized grievances are not actionable.

### A.  The Title VII claims will be dismissed.

Title VII prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). In general, to establish a *prima facie* case of employment discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). At the motion to dismiss stage, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quotations omitted). The "central focus" of the *prima facie* case "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Demonstrating a *prima facie* case of religious discrimination requires evidence that the employer had knowledge of the plaintiff's religion. Since an "employee's religion ... is often unknown to the employer," the United States Court of Appeals for the Third Circuit has required

"that employees [have] informed their employers of their religious beliefs prior to the alleged discriminatory action" in order to make out a *prima facie* case for discharge on account of religion. *Geraci v. Moody–Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Sproul has failed to allege facts that set forth a plausible showing that his religion was a motivating or substantial factor in an adverse employment action. The only factual allegations that touch on his religion are that he is "Christian," and that "[t]he script is designed to manipulate people and didn't always seem truthful and I wanted to make sure that I was being honest and transparent with people and serving the customer like my religious beliefs tell me to." (ECF No. 1, pp. 5 and 7). There are no facts in the complaint regarding the interplay of his religious beliefs and what was occurring in his workplace other than that Ms. Maynard, "daily, verbally abused and assaulted [Sproul] with profanity laced tirades because she disagreed with [his] beliefs," and that Sproul filed a complaint against her. (ECF No. 1, p. 8). But, Sproul fails to set forth facts as to exactly how Ms. Maynard attacked his "beliefs," what those "beliefs" were, and if Defendant knew of his specific religious beliefs. There are no facts regarding when and how Sproul informed Defendant of his religious beliefs and how he was treated differently than other employees because of those beliefs. Finally, there are no factual allegations creating a plausible link between Sproul's religious affiliation and an employment action (either having to read the telephone script or being terminated).

Sproul has failed to plead any fact that creates an inference that an employment action occurred against Sproul by Defendant based on his religion. Absent such factual content, the Court cannot draw the reasonable inference that Sproul was discriminated against due to his protected status. The Court holds that Sproul has failed to state a claim pursuant to Title VII or any other federal law prohibiting employment discrimination on the basis of religion.

**B.  The ADA claims will be dismissed.**

The purpose of the ADA is to "prevent employment discrimination of qualified individuals on account of their disability." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012) (citing 42 U.S.C. § 12112(a)).  The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).  Thus, Sproul must plead "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *see also Stadtmiller v. UPMC Health Plan, Inc.*, 491 F. App'x 334, 336 (3d Cir. 2012); *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).  Defendant argues that Sproul's claim for discrimination should be dismissed because he has failed to plead facts sufficient to establish that he is "disabled" under the ADA.  (ECF No. 22).

Turning to the first element of the *prima facie* case, a disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment [ ]." 42 U.S.C. § 12102(1).  Under the ADA, a physical impairment or mental impairment is defined as:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

8

(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1). Sproul suffers from IBS, anxiety and depression. (ECF No. 1, p. 5). Perhaps these conditions fit within the ADA's broad definition of an "impairment," but "not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. § 1630.2(j)(1)(ii).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of the allegedly disabled individual. 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The term "substantially limits" is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA[ ]" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). The question of whether a given individual is substantially limited in a major life activity is an individualized assessment and is generally a question of fact. *See id.* § 1630.2(j)(1)(iv); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 569 (3d Cir. 2002).

Sproul's factual allegations as to his medical conditions are inadequate. The complaint does not contain any allegations regarding how his conditions limit any major life activity. It does not contain facts regarding the severity of his conditions or their expected duration. Without any allegations regarding the long-term effects of his conditions, the expected duration of his impairments, or the expected length of his recovery, the Court cannot reasonably infer that Sproul is "disabled" under the ADA. *See Amiot v. Kemper Ins. Co.*, 122 F. App'x 577, 580 (3d

Cir. 2004) (affirming a district court's holding that, because the plaintiff admitted "that he was capable of returning to work after seeking treatment," he was not "disabled" under the ADA).

Furthermore, Sproul does not assert that he made a request for an accommodation as to his alleged medical conditions.  There are no facts regarding the manner in which Sproul reported his disability or requested accommodations; what Sproul allegedly reported and requested; to whom he made his alleged reports and requests; or when he made them.  The only accommodation he seemingly requested was to veer off the telephone script.  At one point, Defendant granted his request.  Sproul also notes that hourly breaks are good for employee well-being, but he does not allege that he requested them due to his medical conditions and that Defendant denied his request.  There is nothing else in the complaint that sets forth any factual basis for a failure to accommodate claim.  Further, his generalized statement in his response that "[i]t was a struggle to get HR to address the accommodations I sought," (ECF No. 24, p. 2), is insufficient to state a failure to accommodate claim.  At no point in any of his pleadings does Sproul claim that he was discharged because of any disability.  Sproul has not alleged that he was discriminated against on the basis of a disability, or that there was a discriminatory animus by Defendant.

As Sproul fails to allege sufficient facts to raise a reasonable expectation that discovery will uncover proof that his alleged disability may be sufficiently debilitating, or that Defendant was asked to accommodate or assist Sproul and did not make a good faith effort to do so, the Court will dismiss his ADA claim with prejudice for failure to state a claim.

### C. The retaliation claims will be dismissed.

To establish a *prima facie* case for retaliation under the ADA[2] or Title VII, Sproul must show: "(1) protected employee activity[3]; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse*, 126 F.3d at 500; *Moore*, 461 F.3d at 340-41. He has failed to do so, and his retaliation claims will be dismissed.

Sproul has failed to come forth with factual allegations that he was engaged in protected activity under the ADA. He does not specify a protected employee activity. Telling his co-workers to veer off the telephone script is simply not protected activity, nor is advocating for hourly rest breaks for his co-workers. Assuming he had shown that he engaged in protected activity, Sproul failed to plead any facts to support a possible causal connection between it and an adverse employment action. He fails to state any well-pleaded allegations that would allow

---

[2] Sproul's failure to establish that he is "disabled" under the ADA is not fatal to his retaliation claim. The ADA's anti-retaliation provision protects "any individual" who makes a charge under the ADA or who opposes an unlawful act or practice under the ADA, regardless of whether that individual is "disabled." 42 U.S.C. § 12203(a). *See also Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (stating that the ADA's anti-retaliation provision does "not only appl[y] to those who are protected because they are 'disabled' as defined therein."); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 498 (3d Cir. 1997) ("We hold that a person's status as a 'qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA.").

[3] "Protected activities under the ADA generally include: (1) opposition to a practice made unlawful under the ADA; and (2) participation in an ADA investigation, proceeding, or hearing by making a charge, testifying, or otherwise assisting in the investigation." *Kaniuka v. Good Shepherd Home*, No. CIV.A. 05-CV-02917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006) (citing 42 U.S.C. § 12203(a)). "A request for a reasonable accommodation is a protected activity under the ADA." *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 448 (W.D. Pa. 2009). *See also Shellenberger*, 318 F.3d at 190-91 (holding that the ADA protects an employee who makes a good faith request for an accommodation). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)).

the Court to draw the inference that his termination was the result of his protected activity under the ADA. To the best of the Court's understanding, Sproul faults Defendant for revoking his "accommodation" – his ability to veer off the telephone script – after discussing work issues with his peers. This, however, is not a basis for an ADA retaliation claim. Sproul has not alleged that he was actually subjected to any retaliatory behavior at work when he sought accommodations. It is a fantastical allegation to suggest that making Sproul adhere to the telephone script is an adverse employment action. Sproul has failed to state a claim for retaliation under the ADA.

"[Title VII's] retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). As to his retaliation claim under Title VII, Sproul seemingly suffered adverse employment action in the form of termination. (ECF No. 1, pp. 8-9); (ECF No. 22-1, p. 2). But, it is unclear what protected activity he engaged in related to his religious beliefs. Sproul appears to claim that the protected activity he engaged in was making a complaint about a colleague. He alleges that Ms. Maynard, "daily, verbally abused and assaulted [him] with profanity laced tirades because she disagreed with [his] beliefs," and that he was fired shortly after filing a complaint against her. (ECF No. 1, p. 8). Sproul fails to set forth adequate facts as to exactly how she attacked his "beliefs," and if Defendant knew of his specific religious beliefs. Nevertheless, it is true that opposition under Title VII can take the form of internal workplace complaints highlighting the treatment accorded Sproul or other employees. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, 450 F.3d 130, 135 (3d Cir. 2006); *see also Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) (stating that complaints to employer, "whether oral or written, formal or informal, are sufficient to satisfy the first prong of the prima facie case"). Sproul believed Ms. Maynard was using language that he found

religiously offensive and that she was attacking his religious beliefs. Thus, he has sufficiently pled that he was engaged in protected activity for a Title VII retaliation claim.[4]

However, Sproul has not shown a causal link between the protected activity (complaining about Ms. Maynard) and the alleged retaliatory act of termination. There are insufficient facts to connect these events, and their timing, standing alone, is not suggestive. Sproul has not identified any pattern of antagonism or other facts from which causation can be inferred. More importantly, Sproul admits that he was terminated for insubordination shortly after he posted a video in Defendant's Microsoft Teams chat of a man using the "F word while talking to a business owner about [how] he's the problem." (ECF No. 1, pp. 7-8). Sproul further admits that he was issued a written warning the previous month for having quality of performance rated below 90% and for not being ready on time. (ECF No. 22-1, p. 2). Thus, even if Sproul had established a *prima facie* case of retaliation under Title VII, Defendant had a legitimate, non-retaliatory reason for terminating Sproul. Sproul has come forth with no facts that it was pretextual. *See e.g., Fuentes v. Perskie*, 32 F.3d 759, 765 (a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons ... that a reasonable factfinder could rationally find them unworthy of credence." (citations omitted)). He has failed to state a retaliation claim under Title VII.

For these reasons, the Court will dismiss Sproul's retaliation claims with prejudice for failure to state a claim.

---

[4] To the extent Sproul broadly alleges in his response that he was retaliated against for speaking to his co-workers about working conditions (ECF No. 24, p. 1), that is simply not actionable protected activity under Title VII. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) (explaining that a general "complain[t] about unfair treatment" does not constitute protected activity for purposes of a claim of discriminatory retaliation). An action is not protected activity under Title VII unless the employee has a "good faith" belief that the objected to practice is discriminatory. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

**D.  The Title VII and ADA claims are untimely.**

Even if Sproul had adequately pled his Title VII and ADA claims, they would be dismissed as untimely.  Under both Title VII and the ADA, an aggrieved individual must file an action within 90 days of receipt of the EEOC's right-to-sue letter.  *See* 42 U.S.C. § 2000e-5(f)(1).  It is well established that the 90-day period begins to run either when the attorney or the client/claimant receives the letter.  *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 n.1 (3d Cir. 1999) ("The statutorily-created ninety-day period starts when either the claimant or her attorney receives a right-to-sue letter, whichever is earlier.").  The right-to-sue letter was issued electronically to Sproul on July 11, 2022, and Sproul does not dispute that he received the letter on that date.  He had until October 9, 2022 to file suit.  However, since October 9, 2022 fell on a Sunday, Sproul had until October 10, 2022 to file.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Sproul did not file his complaint until October 11, 2022.

"While the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."  *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (quoting *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)) (internal quotation marks omitted); *see also  Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999)  ("[A] claim filed even one day beyond [the] [ninety-day] window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement.").  Because Sproul filed his complaint outside of the ninety-day window, and because he does not argue that this period should be tolled for an

14

equitable reason,[5] his Title VII and ADA claims are untimely and must be dismissed with prejudice.

### E. Sproul's claims against the entire solar panel industry are not cognizable.

Sproul is unhappy with the solar panel industry and seems to believe it engages in fraudulent marketing practices.  Not only does he fail to set forth any factual or legal basis for a federal claim against any solar energy company, the Court concurs with Defendant that:

> Plaintiff may not sue over a generalized grievance. *See, e.g., Jenkins v. Neighborhood Legal Servs. Ass'n*, 523 F. Supp. 376, 378 (W.D. Pa. 1981) (Weber, J.), *aff'd sub nom. Jenkins, Malley, Rotonto, Tirpak v. Neighborhood Legal Sevices Ass'n*, 688 F.2d 821 (3d Cir. 1982).  Rather, he must have a personalized stake in the outcome of the controversy and allege an injury in fact. *Id.* An "injury in fact" may be "intangible" or difficult to monetize, but it must be "actual or imminent, not conjectural or hypothetical." *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 520 (E.D. Pa. 2017)[.]  Here, Plaintiff purports to bring a generalized grievance common to certain solar energy customers.  He

---

[5] In his response, Sproul states, "[i]t's [a] very challenging task to have me follow all procedures especially because of my mental health issues."  (ECF No. 24, pp. 2).  But, "[t]here is no absolute rule that would require tolling whenever there is mental disability.  Federal courts 'have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods.'" *Lopez v. Citibank, N.A.*, 808 F.2d 905, 906 (1st Cir. 1987) (citing cases); *see also Barren v. United States*, 839 F.2d 987 (3d Cir. 1988) (holding that mental incompetence was not a per se reason to toll the statute of limitations for a claim brought under the Federal Tort Claims Act); *Velez v. QVC, Inc.*, 227 F. Supp. 2d 384, 402 (E.D. Pa. 2002) (statute of limitations for filing a charge with the EEOC should not be tolled unless there is evidence that the plaintiff is not able to manage his own affairs or understand his legal rights).  Mental illness can toll a statute of limitations only if the illness prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.  *Velez*, 227 F. Supp. 2d at 402; *see also Dougherty v. Henderson*, 155 F. Supp. 2d 269, 277 (E.D. Pa. 2001) ("To toll a statute of limitations for mental illness, plaintiff's illness must prevent her from managing her affairs and from understanding and acting on her legal rights.").  Sproul's pleadings do not allege mental health diagnoses sufficiently "severe and incapacitating" to justify the application of equitable tolling.  While the Court does not minimize Sproul's asserted conditions, he failed to demonstrate that he was unable to manage his own affairs or understand his legal rights within the time he had to file a lawsuit after receiving the right-to-sue letter.  There is no evidence that Sproul has ever been adjudicated incompetent or institutionalized for his mental conditions.  Since April 2022, Sproul has filed three lawsuits in this district, 22-cv-00607, 22-cv-00612, and 22-cv-01439.  All of them were filed against former employers, and Sproul never missed a filing deadline.  For these reasons, Sproul's alleged mental health conditions did not compromise his mental state to an extent which would justify equitable tolling of the statute of limitations.

does not claim he himself is a solar energy customer, or that he suffered any harm because of the facts alleged.  Plaintiff thus lacks standing to bring these claims. *Id.*

(ECF No. 22, p. 12).  Hence, the Court dismisses with prejudice claims against the solar panel industry.

### IV.   CONCLUSION

For the aforementioned reasons, the Court will grant Defendant's motion and dismiss all claims against it with prejudice.[6]  Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_____5-18-23_____
Date

---

[6] The Federal Rules of Civil Procedure permit courts to "freely" grant leave for parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Here, the problems with Sproul's complaint go beyond mere pleading deficiencies.  Sproul has not argued in any of his pleadings that he could offer additional factual allegations to overcome the hurdles to relief discussed herein.  Further, leave to amend would be futile because Sproul would still fail to state claims upon which relief could be granted as his claims are legally inadequate and incurable. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) (a complaint that sets forth facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend).